IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

SHANE G. S.,

                Plaintiff,

    v.                                    Civil Action No.
                                           5:20-CV-0193 (DEP)

ANDREW SAUL, Commissioner Social
Security Administration,

                Defendant.
_____

APPEARANCES:                            OF COUNSEL:

FOR PLAINTIFF

LEGAL AID SOCIETY OF            ELIZABETH LOMBARDI, ESQ.
  MID-NEW YORK INC.
221 South Warren Street, Suite 310
Syracuse, NY 13202

FOR DEFENDANT

SOCIAL SECURITY ADMINISTRATION    NATASHA OELTJEN, ESQ.
Office of General Counsel
J.F.K. Federal Building
Room 625
Boston, Massachusetts 02203

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

ORDER

Currently pending before the court in this action, in which plaintiff seeks judicial review of an adverse administrative determination by the Commissioner of Social Security ("Commissioner"), pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), are cross-motions for judgment on the pleadings.[1] Oral argument was conducted in connection with those motions on March 2, 2021, during a telephone conference held on the record. At the close of argument, I issued a bench decision in which, after applying the requisite deferential review standard, I found that the Commissioner's determination did not result from the application of proper legal principles and is not supported by substantial evidence, providing further detail regarding my reasoning and addressing the specific issues raised by the plaintiff in this appeal.

After due deliberation, and based upon the court's oral bench decision, a transcript of which is attached and incorporated herein by reference, it is hereby

ORDERED, as follows:

---

[1] This matter, which is before me on consent of the parties pursuant to 28 U.S.C. § 636(c), has been treated in accordance with the procedures set forth in General Order No. 18. Under that General Order once issue has been joined, an action such as this is considered procedurally, as if cross-motions for judgment on the pleadings had been filed pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

1) Plaintiff's motion for judgment on the pleadings is GRANTED.

2) The Commissioner's determination that plaintiff was not disabled at the relevant times, and thus is not entitled to benefits under the Social Security Act, is VACATED.

3) The matter is hereby REMANDED to the Commissioner, without a directed finding of disability, for further proceedings consistent with this determination.

4) The clerk is respectfully directed to enter judgment, based upon this determination, remanding the matter to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) and closing this case.

_____
David E. Peebles
U.S. Magistrate Judge

Dated: March 3, 2021
Syracuse, NY

```
UNITED STATES  DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
---------------------------------------x
SHANE G. S.,

                            Plaintiff,

vs.                           5:20-CV-193

ANDREW M. SAUL, COMMISSIONER OF
SOCIAL SECURITY,


                            Defendant.
---------------------------------------x
```

Transcript of a **Decision** held during a Telephone Conference on March 2, 2021, the HONORABLE DAVID E. PEEBLES, United States Magistrate Judge, Presiding.

A P P E A R A N C E S

(By Telephone)

| | |
|---|---|
| For Plaintiff: | LEGAL AID SOCIETY OF MID-NEW YORK INC.<br>221 South Warren Street, Suite 310<br>Syracuse, New York  13202<br>  BY:  ELIZABETH V. LOMBARDI, ESQ. |
| For Defendant: | SOCIAL SECURITY ADMINISTRATION<br>Office of General Counsel<br>J.F.K. Federal Building<br>Room 625<br>Boston, Massachusetts  02203<br>  BY:  NATASHA OELTJEN, ESQ. |

*Jodi L. Hibbard, RPR, CSR, CRR*
*Official United States Court Reporter*
*100 South Clinton Street*
*Syracuse, New York  13261-7367*
*(315) 234-8547*

1                    (The Court and all counsel present by
2                       telephone.)
3              THE COURT:  Thank you.  Let me begin by thanking
4     both counsel for excellent presentations, I've enjoyed
5     working with you.
6              Plaintiff has commenced this proceeding pursuant to
7     42 United States Code Sections 405(g) and 1383(c)(3) to
8     challenge the finding by the Commissioner of Social Security
9     that plaintiff was not disabled at the relevant times and
10    therefore is ineligible for the benefits which he sought.
11             The background is as follows:  Plaintiff was born
12    in August of 1957, he is currently 63 years old.  He was 58
13    years of age at the time of the onset of his alleged
14    disability in May of 2016.  Plaintiff stands between
15    five-foot-five and five-foot-six inches in height and at
16    various times has weighed between 238 pounds and 272 pounds,
17    the latter figure was cited during the hearing testimony of
18    the plaintiff.  Plaintiff is single and has no children.  He
19    lives alone in an apartment in Syracuse, New York.  Plaintiff
20    has a high school diploma and has achieved both a bachelor's
21    degree in music performance and a master's degree in music
22    education from Syracuse University.  Plaintiff has a driver's
23    license but no car.  He does take public transportation.
24    Plaintiff is right-handed.
25             The evidence is equivocal as to when plaintiff

1   stopped working.  In the function report that was submitted
2   he indicated that occurred on April 28, 2016 but in his
3   hearing testimony, he stated that it occurred on May 18,
4   2016.
5              As an aside, hopefully -- I'm going to ask both of
6   you to mute your phones if you have not done so already.
7              Plaintiff worked from September 1981 to May of 2010
8   in various positions as a library technician.  He worked from
9   April 2012 to April of 2016 part time as a receptionist in a
10  nonprofit setting.  He left there, taking medical leave as a
11  result of his incontinence issues and odors associated with
12  that issue.
13             Plaintiff suffers physically from fecal and urinary
14  incontinence, bilateral knee issues that have been diagnosed
15  by Dr. Seth Greenky as medial meniscus tears, he has a back
16  condition, he suffers from diabetes, sleep apnea, asthma, and
17  hypertension.  He has not undergone any magnetic resonance
18  imaging or MRI testing of his back or knees because he has an
19  implant that precludes MRI testing.  An InterStim bowel
20  control device was implanted in the plaintiff in August of
21  2013, that appears at 407 and 408 as well as 415 of the
22  administrative transcript.  He also underwent Botox
23  injections in August 2015 to address his urinary incontinence
24  issue, that appears at page 770 of the administrative
25  transcript.

1              Plaintiff's lumbar back was x-rayed on November 5,
2       2018.  The resulting impression was, there are six
3       non-rib-bearing vertebrae, mild to moderate degenerative
4       disease is seen, no acute bony changes noted.  In the
5       findings, it was indicated that vertebral body height and
6       alignment overall is maintained, some osteophyte formation
7       and facet arthropathy seen at several levels consistent with
8       degenerative disease.  No acute fracture is noted.
9       Sacroiliac joints are intact.  A stimulator and power pack is
10      noted.  That appears at page 1850 of the administrative
11      transcript.
12             Mentally, plaintiff suffers from a condition that
13      has been variously diagnosed as bipolar disorder, depression,
14      generalized anxiety disorder, affective disorder.  It is
15      indicated, but the evidence is equivocal, that he may have
16      autism spectrum disorder, although plaintiff says no at page
17      907, but there's an indication at page 1103 of the
18      administrative transcript that he does.
19             Plaintiff's primary care provider is Dr. Laura
20      Martin with Family Medical Care Group.  He has also seen
21      Dr. Borys Buniak of Gastroenterology and Hepatology of
22      Central New York, Dr. Shawn Springer, Nurse Practitioner
23      Tammy Balamut, and Clinical Social Worker Adam Schwartz at
24      Circare, Dr. Margaret Plocek of Colon Rectal Associates of
25      Central New York, Dr. Andres Madissoo of AMP Urology,

1  Dr. Brett Greenky of Syracuse Orthopedic Specialists,
2  mentally Dr. Masud Iqbal of Upstate Psychiatric Care, also
3  seen Dr. Bala Murthy of Nephrology Associates of Syracuse and
4  various other providers including nurse practitioners and
5  registered nurses.
6        Plaintiff has a fairly wide range of activities of
7  daily living and interests.  He's able to dress, bathe,
8  groom, cook, wash dishes, clean, do laundry, shop, take out
9  trash, drive, take public transportation, socialize with
10 friends and family, mall walk, watch television, listen to
11 radio, and attend Alcoholics Anonymous meetings five times
12 per week.  Plaintiff does not smoke.  He did apparently
13 suffer from alcohol and marijuana abuse from 1975 to 1989.
14       Procedurally, October 26, 2016, plaintiff applied
15 for Title II and Title XVI benefits, alleging an onset date
16 of May 18, 2016.  At page 295, he claimed disability based on
17 incontinence, autism, sleep apnea, generalized anxiety
18 disorder, hypertension, high cholesterol, bladder outlet
19 obstruction, enlarged prostate, and chronic nocturnal
20 enuresis.  I note that there were apparently prior
21 applications that were denied, last being on July 25, 2016.
22       On November 26, 2018, a hearing was held by
23 Administrative Law Judge Charles Woode.  On January 29th,
24 2019, Judge Woode issued an unfavorable decision, finding
25 that plaintiff was not disabled at the relevant times.  That

became a final determination of the agency on January 17, 2020 when the Social Security Administration Appeals Council denied plaintiff's application for review.  This action was commenced on February 21, 2020, and is timely.

In his decision, ALJ Woode applied the familiar five-step sequential test for determining disability.  He first found that plaintiff's last date of insured status was December 31, 2018.

At step one he concluded plaintiff had not engaged in substantial gainful activity since May 18, 2016.

At step two, ALJ Woode concluded that plaintiff suffered from medically determinable impairments, including fecal and urinary incontinence, left sacroiliitis, lumbar degenerative disk disease, knee pain, obesity, generalized anxiety disorder, and autism spectrum disorder.  He concluded, however, that none of those impairments were severe in that none of them precluded plaintiff's ability to perform the basic functions of work and therefore ended the analysis.

The court's function of course is to determine whether correct legal principles were applied and the resulting determination is supported by substantial evidence. Substantial evidence is defined as such relevant evidence as a reasonable mind would accept as sufficient to support a conclusion.

In this case plaintiff raises three basic contentions. First, he contends that the failure to find any severe impairments at step two was error, pointing to incontinence, back pain, knee pain, mental condition, and obesity.

Secondly, he contends that the administrative law judge erred in failing to address and give weight or indicate what weight is being given to medical opinions in the record including from Dr. Laura Martin, a treating source, Dr. Margaret Plocek, treating source, and Clinical Social Worker Adam Schwartz, who also treated the plaintiff.

And thirdly, he contends that the administrative law judge improperly rejected his subjective complaints regarding his symptoms without proper explanation, an argument that we used to refer to as credibility under the old regulations and case law.

In response, defendant argues that plaintiff failed to carry his burden of demonstrating a severe impairment at step two limiting his ability to perform basic work functions.

Secondly, it was admitted error not to weigh the medical opinions in the record but the error was harmless and if the administrative law judge had applied the proper standard, they would not have been given controlling weight.

And thirdly, the administrative law judge explained

1   his reasoning for the evaluation that he gave to plaintiff's
2   complaints.
3           Turning first to the step two argument, under the
4   governing regulations, an impairment or combination of
5   impairments is not severe if it does not significantly limit
6   a claimant's physical or mental ability to perform basic work
7   activity.  20 C.F.R. Section 404.1521(a).  The section goes
8   on to describe what is meant by the phrase basic work
9   activities, defining that term to include both the abilities
10  and aptitudes necessary to do most jobs.
11          The second step requirement is notoriously de
12  minimus.  It is intended only to screen out the truly weakest
13  of cases.  *Dixon v. Shalala*, 54 F.3d 1019 at 1030, Second
14  Circuit 1995.  However, the mere presence of a disease or
15  impairment or establishing that a person has been diagnosed
16  or treated for a disease or an impairment is not by itself
17  sufficient to satisfy the step two test and establish a
18  condition as severe.  *Coleman v. Shalala*, 895 F.Supp. 50 at
19  53, Southern District of New York 1995.
20          In this case, if the Commissioner erred at step
21  two, the error is not harmless.  Many cases that we see where
22  an administrative law judge has proceeded to step three of
23  the sequential analysis, we may find, or may not, that the
24  error is harmless if the condition was properly considered
25  when the residual functional capacity or RFC was formulated.

1     In this case, clearly the error is harmless -- harmful if
2     there was an error because it ended the inquiry.
3            Turning to the back and knee, one thing that the
4     Commissioner argued -- that the plaintiff argued was focused
5     on the durational requirement.  It was addressed at page --
6     the knee and back issue was addressed at page 18 to 19.  The
7     Commissioner I think argued and I think cited *Perez v. Astrue*
8     for the proposition that the condition must last 12 months.
9     The actual regulation which is supported as well by the
10    statute which is 42 United States Code Section 423(d)(1)(A)
11    and the regulation is 20 C.F.R. Section 404.1509, requires in
12    terms of duration that it either has lasted or the condition
13    can be expected to last for a continuous period of not less
14    than 12 months.  *Gladle v. Colvin*, 2013 WL 5503687, from the
15    Northern District of New York, September 30, 2013.  However,
16    I've reviewed carefully the administrative law judge's
17    decision, it does not appear to turn on the durational
18    requirement but instead focuses on the severity prong of the
19    appropriate test.  The administrative law judge cites such
20    things as conservative treatment, the limited treatment of
21    plaintiff's knee and back conditions, the fact that
22    Dr. Greenky was only consulted once with regard to the right
23    knee and once or twice or limited number with regard to the
24    left.  The problem is that the administrative law judge
25    doesn't indicate whether he considered the opinion of

1   Dr. Martin which, although it doesn't specify that it relates
2   the limitations presented to the back and knee, strongly
3   suggests that it might have been.  And given the de minimus
4   standard at step two, I think it was error not to conclude at
5   step two that the back and knee conditions were severe.
6           Turning to obesity, the administrative law judge
7   addressed obesity briefly in one paragraph of his decision
8   that appears at page 19 and he finds that it is not severe.
9   He claims that he has considered the obesity as required
10  under Social Security Ruling 02-1p.  That ruling gives
11  guidance as to how obesity is to be addressed and how to
12  address the interplay between obesity and its potential
13  impact on disability and on other conditions such as, for
14  example in this case, the back and knee conditions.  The
15  paragraph that addresses obesity is very scant.  It states
16  that the ruling has been complied with and, "The cumulative
17  effects of the plaintiff's obesity have been fully considered
18  in the same manner as all other medically determinable
19  impairments.  The claimant's obesity is medically
20  determinable but since it does not cause or contribute to any
21  significant limitations on the claimant's ability to perform
22  basic work activities, it is not severe." I agree with the
23  plaintiff that I think this explanation is -- does not fully
24  articulate the reasoning and does not comport with the SSR
25  02-01p, *Marthe v. Colvin*, 2016 WL 3514126 from the Western

1   District of New York, June 28, 2016.
2              The mental, I'm less convinced that the
3   Commissioner erred with regard to the mental limitations and
4   conditions experienced by the plaintiff.  Those are discussed
5   at 20 to 21 of the administrative transcript.  At the hearing
6   plaintiff stated that he had no problem with his memory,
7   attention and concentration, understanding and ability to
8   perform, understand and follow instructions, that's at page
9   40.  The administrative law judge considered the four
10  relevant functional areas and found mild limitations in three
11  and none in the fourth.  I think the findings are supported
12  and well stated.
13             Finally, in connection with incontinence, the
14  relevant period is May 18, 2016 to January 29, 2019.  Many of
15  the records cited by the plaintiff predate that, and there is
16  indication that there was improvement, particularly with
17  regard to the bowel incontinence.  However, in Dr. Plocek's
18  medical opinion, which appears at 1688 through 1692 of the
19  administrative transcript, it's clearly indicated that there
20  are continued issues both with regard to urinary incontinence
21  and bowel incontinence and control, and at 1689, it is a
22  condition that is characterized as permanent for life.  The
23  plaintiff did testify to effects of his incontinence on odor
24  and job loss, evictions.  Unfortunately it was not well
25  developed at the hearing as to what requirements he would

1  have in terms of access to bathroom facilities, how often and
2  how long, but those are things that should have been
3  considered, put into the residual functional capacity finding
4  if there had been one.  I think that the incontinence should
5  have been considered severe at step two.  *Crowley v. Apfel*,
6  197 F.3d 194 from the Fifth Circuit Court of Appeals, 1999.
7  The next issue -- so I find error at step two.

8  I also find error in the failure to consider the
9  medical source opinions in the record.  There are medical
10 opinions from Dr. Margaret Plocek, a treating source, 1688 to
11 1692.  There are medical source opinions from Dr. Laura
12 Martin, another treating source, from October 19, 2018, and
13 that appears at page 1651 to page 1657.  There's a medical
14 opinion from Dr. R. Nobel, PhD, from December 21, 2016, an
15 agency consulting psychologist, nonexamining.  There's an
16 opinion from Dr. Jeanne A. Shapiro, December 15, 2016,
17 page 905 to 909, and an opinion from Clinical Social Worker
18 Adam Schwartz from May 5, 2017, not an acceptable medical
19 source but someone that has treated the plaintiff for his
20 medical conditions.

21 Under the treating source rule, the opinion of a
22 treating physician regarding the nature and severity of an
23 impairment is entitled to considerable deference, provided
24 that it is supported by medically acceptable clinical and
25 laboratory diagnostic techniques and is not inconsistent with

1    other substantial evidence.  *Veino v. Barnhart*, 312 F.3d 578,
2    Second Circuit 2012.  Where there are conflicts in the
3    medical opinions in the record, it is for the administrative
4    law judge to weigh and resolve those conflicts.  *Veino*, 312
5    F.3d at 588.
6            Clearly, there is error in this case in that the
7    plaintiff -- in that the administrative law judge does not
8    address the medical opinions in the record.  Under 20 C.F.R.
9    Section 404.1527 and Section 416.927, it is the duty of the
10   administrative law judge, not the court, to weigh medical
11   opinions.  I reject in this case post hoc rationale and an
12   invitation that the court perform that function.  It is for
13   the administrative law judge.  When the relevant factors
14   concerning the weight to be given to a medical opinion, the
15   so-called *Burgess* factors, are not considered, the court may
16   nevertheless find it is harmless error if, and it's based on
17   a searching review of the record, that the treating source
18   rule has not been violated.  *Estrella v. Berryhill*, 925 F.3d
19   90, Second Circuit 2019.  I'm unable to say that, however, in
20   this case, because there was no analysis whatsoever of the
21   opinions, including two from competent treating sources and a
22   third from a treating source although not a medical,
23   acceptable medical source.  So I find error at step two, and
24   I find that it is harmful error and a basis to remand the
25   matter to the Commissioner.

1              I am therefore not going to address the third
2    argument concerning the analysis of plaintiff's subjective
3    complaints.
4              I will, however, grant judgment on the pleadings to
5    the plaintiff and remand the matter to the agency for further
6    consideration with respect to the step two determination and
7    the medical opinions in the record and, if appropriate, to
8    continue through to step five of the sequential analysis.  I
9    don't find any persuasive evidence of disability so I'm not
10   going to direct a finding in that regard.
11             Thank you both for excellent presentations, please
12   stay safe.
13             MS. LOMBARDI:  Thank you, your Honor.
14             MS. OELTJEN:  Thank you.
15                  (Proceedings Adjourned, 2:46 p.m.)

CERTIFICATE OF OFFICIAL REPORTER

I, JODI L. HIBBARD, RPR, CRR, CSR, Federal Official Realtime Court Reporter, in and for the United States District Court for the Northern District of New York, DO HEREBY CERTIFY that pursuant to Section 753, Title 28, United States Code, that the foregoing is a true and correct transcript of the stenographically reported proceedings held in the above-entitled matter and that the transcript page format is in conformance with the regulations of the Judicial Conference of the United States.

Dated this 3rd day of March, 2021.

/S/ JODI L. HIBBARD

JODI L. HIBBARD, RPR, CRR, CSR
Official U.S. Court Reporter